The time set for our argument in the case of Bogdan Radu v. Persephone Johnson Shon. The parties are ready to proceed. You may begin. May it please the court, may I reserve one minute, please, for rebuttal? Yes. Thank you. And your honors, where we say is the starting point from the appellant mother's perspective is page 129 of the excerpts of the record. Page 129 is the introductory section of the first day of the evidentiary hearing on remand. And what you'll see at lines three through seven on page 129, her honor in the lower court herself anticipated that an individual that she would speak with at the state department with respect to German law would be present in open court to give the information in open court and subject to cross-examination by counsel and by the father himself. Now when you juxtapose that with page 51 of the excerpts of the record, which is the second day of the evidentiary hearing on remand, you'll see it wasn't until the state department declined to send a representative that the court decided the approach was to proceed ex parte with that communication. Now, I just want to make sure I understand your ex parte argument. Are there other cases that have struck proceedings like this down? It seems like this is specifically contemplated by the convention that these communications will be facilitated. And so I'm not entirely sure where other courts have stepped in. It seems like what was done here below was not only consistent with what we directed in our prior order, but consistent with how most of the other courts have handled this. If it had not been a partially fact-based investigation, then it might have been in compliance with the circuit. What were the facts that were consulted from the international sources? Sure. The facts the court was looking for were from a factual perspective, how long would it take for a German court to have a hearing? There had been expert testimony that jurisdiction would not attach with respect to custody until approximately six months after the children had been in Germany. Separately, the Petitioner's Exhibit 65 was the German court's decision already explaining that it wouldn't have jurisdiction until approximately six months after the children had been in Germany. What the court was looking here with the German and the U.S. government officials was how long would it take for a hearing to take place? And that's not a legal question. That's a factual question. The court was also looking for what services are available from a factual perspective in Germany for the children. And what the court then used that ex parte information to do was to reach a factual conclusion that a court in Germany would reach a custody determination for the children within, the court said, within six months of the children's arrival back in Germany. Can I, not to push you on this, but I wanted to ask about the 90-day tourist visa. Can you explain to me, that seems to be uncontested, can you explain to me why Sean can only return for 90 days? Is their divorce, I didn't see anything in the record, is their divorce final, Sean and Raduz? No, and her immigration status doesn't relate to Mr. Radu's status anymore, because the status she had previously has expired. So she had been a dependent on Mr. Radu's immigration status that has expired within the time that she has been back. And the fact that they're married doesn't change that. That's right. It doesn't change that. And so like any American traveling to Germany, the mother would be able to enter on what's similar to our visa waiver program here for incoming Europeans for visitor purposes for 90 days, and would not have any immigration authority to work or to live in Germany. And the kids could stay longer than 90 days because of the status as children to Radu, is that the difference? The difference relates to the children have different immigration status than the mother from a larger picture perspective. The children are both US and Romanian citizens, and by virtue of their Romanian citizenship would be able to stay in Germany for longer than they would if they had only American citizenship. The mother, Ms. Sean, does not have any citizenship other than American. Can I ask you about the ameliorative measures? What would be enough in your view? Would the first return order sole custody provision be enough? I know there's some question about whether or not that still would be in effect. Right. The first return order's custody provision, we say, isn't permissible under Hague jurisprudence and under the federal court's authority. That would, contrary to the Golan Supreme Court case, usurp the German court's authority to enter custody orders. The problem we have here with the only ameliorative measure that's been ordered is that Ms. Sean is allowed to travel back to Germany with the children. So, for example, while the court did ask Mr. Radu, would you commit to paying for rent for the other members of your family to live separately? Would you commit to paying for their travel? No such requirements were imposed. And there was no requirement like there was in the Golan versus Sada case that Mr. Radu stay away from the family. What the lower court here found was that the parents are on parity. They're on equal footing when it comes to custody and by operation of law in Germany right now with no custody orders entered. The district court did say that it was relying on Radu's explanation and commitment that the children, even though there was going to be joint custody, that the children would the mother until such time as the custody could be determined by a German court. So at the remand hearing, the court asked Mr. Radu if he would make those commitments, but it never enforced those commitments in its order. It never made that a requirement. The only requirement in the lower court's order with respect to ameliorative measures was that the mother be the one to travel back to Germany with the children. And in the district court's order from last December, there was a reference to if the parties needed further direction or assistance with logistics of how this is going to happen to come back to the court. Is that not a logistics question that gets resolved in terms of how, like who's paying for the tickets for the kids and who's paying for the rent over there? I mean, I get your point that the order that we're looking at is a little bit sparse in terms of how all this is going to play out. But it does seem that the district court kind of created an avenue for those things to get worked out. And the question for us, isn't it whether the harm can be ameliorated through measures at all? And we say that's why an evidentiary hearing was required on the second remand. And the reason we say that is under this court's jurisprudence in Gelden, the court requires, and this is at page 1036 in Gelden, the court requires that a district court must consider the effect of any possible remedies in light of the circumstances as they exist at present. That wasn't specific only to the Gelden case that was looking at grave risk remands. And what we say the information the court needed was what is the impact of the father's psychological abuse on the children? What is that impact now? Is that abuse still having an impact on the children now? I'm not tracking that argument so much because if that position is right, then every single time if you have a case that goes up and down a little bit before it gets finally resolved, you're going to have an evidentiary hearing every time something new is happening at the district court. And that seems counter to the convention and the purpose of getting this done quickly. So I'm not really sure why you would need an evidentiary hearing on any sort of impacts on the father's behavior on the kids because we should know that already. I mean, to the extent you have an argument, there would be something changed logistically that we need to know about from the last time that we were getting testimony. But even then, there's nothing to indicate from the briefing that I see that what the testimony that the district court got the last time is somehow still. Well, so we say the district court does need to know what impact that has on the children now to inform how the district court forms its ameliorative measures, such as including a provision that Mr. Radu doesn't try to live with them and order imposing that rather than just saying he said at the evidentiary hearing that he will proceed in that manner. And that's why we say the further evidentiary hearing was required. What do you think that a further evidentiary hearing would show? So the psychological expert, which the lower court recognized and commented that it was not going to hear from the psychological expert at the first remand hearing because it wasn't contemplating the children going back with Mr. Radu. But in the second, excuse me, in the third return order, the lower court did recognize that because Ms. Shawn can only stay in Germany for up to 90 days based on her immigration status that de facto results in the children going back at least after the 90 day period to Mr. Radu because Ms. Shawn can't stay in Germany anymore. And so what we say the relevant evidence that the court needed was from the psychological expert to explain to her honor what impact within those first 90 days and between the end of the first 90 days until the time a German court can make a custody determination what impact would that have on the children with respect to re-traumatizing them and the psychological harm that they had already been put through and that the court already found. Oh, thank you. You're over time. I'll give you a couple minutes for rebuttal. Thank you, your honor. Ms. Irwin. Good afternoon. Can you hear me okay? Yes. Okay. Good afternoon, your honors. May it please the court. My name is Michelle Irwin on behalf of Appelli, Bogdan Radu. Since this case was last before the court, the district court has twice ordered the children's return to Germany. Shawn seeks to overturn the district court's order based on three primary arguments. First, that the district court was required to conduct a third evidentiary hearing when considering its order in light of Golan Visada. Second, that the district court erred in contacting the State Department, though this court instructed the district court that it may do so. And third, that the district court erred in its factual findings, though each of those findings is supported by the record. Shawn fails to identify any reversible error and this court should therefore affirm the district court. Can I move to the evidentiary findings or the actual findings? It seems like there's no disagreement that Shawn can only go over on a 90-day tourist visa, correct? I think that's correct, yeah. And it also seems to be a finding that the German court could act within six months or about six months. There's this kind of throwaway that, well, they might be able to act more expeditiously. So here's my question. If you take the fact that Shawn can only be there for 90 days and assume that the German court can only act within six months, what's the status of the children for the second 90-day period in that six-month period? Is that sole custody of Radu at that point? So the district court made several findings with regard to that issue. First, the district court found that Shawn's parents would likely be able to travel to Germany and help either with child care financially or physically during that time period. Before you go on to the other one, is that enough that the parents would likely go? Is that enough? I think in connection with the rest of the court's findings, it is enough. The court also found that... What if the parents couldn't go or wouldn't go? Would the district court's finding have been defensible absent that? So in the circumstance where Shawn has to return after 90 days and the children are still in Germany, the court found that it had previously considered the risk of harm over too lengthy a period. The way the district court structured its order was that while it had previously found that there was a psychological risk of harm to the children over if they were returned to Mr. Radu's custody indefinitely and immediately, that her order ordering Ms. Shawn to return to Germany with the children would allow a 90-day grace period for the courts to issue an order within six months or even before, if necessary, resolving the issue and preserving the comedy issue for the German courts. But the statement by the district court that it was over too long of a period, does that really change the grave risk finding? It doesn't appear to change the grave risk finding and it doesn't look like the petitioner is challenging the grave risk finding. And so I'm having a little trouble with that. So assuming that is the case, that puts a lot more emphasis on that second 90-day period. Sure. I think that language does not change the grave risk finding. What that language does is shape and color how we have to consider the ameliorative measure in light of the risk found. So if the risk found is a psychological harm over the long-term exposure to Mr. Radu's conduct, that is ameliorated significantly if the children are only in his care for 30, 60, 90 days, something of that sort. And I think that is what the district court found on its second remand. Is it fair to assume, as I am doing, that based on the most current order from the district court, kids are going to go back if they go back and the status is going to be joint custody, whatever that looks like, right? I mean, there's nothing in the district court's order that says that they're going to be with mom full-time for however long she's in Germany. Is that fair? That is fair. But as your honor pointed out earlier, the district court has twice now offered to conduct a follow-up hearing at the request of the parties to delineate any specifics as to the return, what that would look like, how the family might remain separate during that time. And that has not been conducted yet. So I think some of the specifics will come to light in that hearing if it's ever requested. It makes sense to me that in a logistics hearing, you might have something figured out in terms of how are the plane tickets for the kids getting paid for. And we are going to require that mom has a separate place to live and maybe dad's going to be required to contribute financially to making sure that that happens. But my understanding from what the district court has said over time is, and what it's learned, is that any sort of order it might put into place with regard to custody, temporary or otherwise, probably not going to be binding. Because the whole point of this is to let Germany figure this out, the custody question, right? And so is it fair for us to look at what the district court's decision was with the understanding that the kids are going to go back, but there's not going to be any control by this country over whether dad is seeing the kids or how often? Because that's going to get sorted out by a different court system. Sure. So I think there's a few findings that were relevant there. First, the district court found that though the German court is not required to consider the district court's order as a custody order, it has discretion to do so. And based on Mr. Hanke, Ms. Chong's German law expert, the testimony Mr. Hanke provided showed that a German court may very well construe this as a temporary custody provision until it has the opportunity to act on its own. Um, that in connection with the fact that the, um, the, oh, Ms. Chong had testified that she will remain in Berlin, will likely remain in Berlin during the period while the German court is making its custody decision, reinforces the fact that the family will be kept separate. Mr. Raidu has no idea of knowing where she is in Berlin or how to contact her in Berlin. But that's just for the first 90 days. I'm sorry. That's only separate for the first 90 days. So I guess I'm zeroing in on what my colleagues are zeroing in on here. What about second 90 days? Well, the district court does have an express finding in her order that if the children are to return to Mr. Raidu for the second 90 day period, that the risk of harm to the children would be very low over that period. That wasn't a question, is it? So you think we can interpret that order to say that worst case scenario here is that the kids will be in sole custody effectively. I mean, it's joint custody legally, but sole custody effectively with Mr. Raidu for the second 90 day period and that the district court said that's fine. That's correct. And I think you can see that at the excerpt of record 44. She has a long paragraph in there about how the children's return to Germany and Ms. Sean's care will help ameliorate the risk of psychological harm to the children. And that if the children do have to return to Mr. Raidu's care pending the rest of the custody dispute, that that would be OK in her findings. And that's this statement about Sean's ability to stay with the children in Germany with joint custody rights for the first three months will help the children transition back to German society and to the care of their father. So that seems to be suggesting that the district court is contemplating Mr. Raidu potentially having effectively sole custody for three months and that that's OK. That's correct. Yes. Yeah, the district court found that based on Mr. Raidu's testimony throughout the hearing, which she found to be very credible and that her in her consideration of the risk of harm, that that would be sufficient to protect the children. What about protective services? I mean, I was a little confused what the district court's finding was about protective services, because it's not clear to me. I mean, the district court seems to be relying on the fact that German protective services could step in, but it's not clear to me what they could do. Because this isn't a situation where they could step into the shoes of the mother. If Sean goes back and Raidu has sole custody, I don't I mean, I don't think that the child protective services can do anything unless there's some sort of, I guess, abuse, maybe. But they can't like step in and take. They couldn't take custody away from Raidu just because the mom had to go back. Right. I think the finding there was that they could step in and take the children away if there were some need to at current, under the current findings, there is no need to take the children away from Raidu for that short period of time between the mother's departure and the German, the German courts. So that's the only consideration for child protective services in Germany is as like this kind of fail safe if everything else goes badly. That's my understanding. Okay. So do we know, I mean, the caseworker would be assigned a child like the equivalent of a child protective caseworker would be assigned to this case when Ms. Sean moved back or once she left after the 90 day period. Is that. Sorry. Is that clear from the record? I don't think that's clear from the record. I don't think it's clear that the procedure for having a caseworker assigned. I would imagine that it would have to be Ms. Sean would have to contact, you know, the services there and arrange for that upon her arrival. But I don't believe there were any explicit findings to that effect in the record. The last time we were here, we declined to allocate the burden of proving the sufficiency of an alternative remedy or ameliorative measures on either party. But it seems like every circuit to consider the issue puts the burden on the petitioner. And here that's your client. If we impose that burden on your client, do you think your client succeeds here? Yes, I think in light of this court's last order, where it said in rare circumstances, voluntary commitments can be sufficient where the risk is low. I think that is satisfied here. The district court found that the risk of harm to the children is low because of, it was just her finding was that there was a risk of psychological harm over the long term. And his voluntary commitments to remain separate from Ms. Sean and the children pending the custody dispute would be sufficient. And he would have bore his burden by showing that by committing that way. Are there any obligations on your client at this point? I mean, the district court talks about the possibilities that Mr. Radu will pay. Mr. Radu will pay for the tickets over for the kids, potentially pay for Sean's ticket, will pay for separate housing, will not interfere with the custody of the children until the German courts have acted. But it doesn't sound like those were actually put in as requirements. Is that a problem? Or do you read it differently? Do you read the order as saying your client has those obligations? I read it that my client has agreed to, voluntary committed to abide by all of those requirements. And that his testimony was credible in the court's opinion. So therefore, that would be sufficient to bind him under this court's order. Also, the district court had a finding at ER 43 that the German court might very well construe her order as a temporary custody provision, in which case it would be binding in Germany. That's how she opens her discussion. I guess that's my question is, there's a difference between him being willing to be bound and actually being bound. I don't see the district court's order as actually saying any of those requirements actually have to happen. So in this court's last order in this case, it seemed as though the court had rejected the idea that an order must be enforceable because that would run afoul of comedy principles in Germany or within the convention. And instead, the order required that there must be a high likelihood of performance based on the findings in the record. Here, I think we clearly have a high likelihood of performance. The district court found that Mr. Reddy's testimony was credible that he would voluntarily abide by these restrictions. And she sees no reason why that wouldn't be the case. And what happens if he doesn't, though? What happens then? If he has a change of heart or what's the enforceability then at that point? That's why I think where we'll turn to the child protective services available in Germany and Ms. Shawn and the children's ability to access those services. We don't know when child protective services would come in. Do we based on the record here? Or at what point they engage? And I don't know if it's too much to ask the district court to try to figure that out. I mean, at some point, it's like, are we expecting the district court to work through every eventuality here? Or is what's here enough? But the possibility that your client may change his mind is of some concern. And I'm trying to figure out what is the backstop if that happens? Well, I think that's a fair question.  As far as whether or not the district court needs to consider that to tie this all into a bow, I think part of the discomfort with Hague Convention jurisprudence is that it is a bit of a leap of faith to trust Germany. We've entered into a convention with this country on the basis that they have adequate protections for children if we're going to return children under the convention. We've, as a country, rejected other applicants to the convention because we didn't find their protective services or their family protective services adequate. So I think that part is, there aren't facts in the record to support exactly the day that child protective services would act. But the district court did find that there were child protective services in Germany, I think she said, similar to those in the U.S. And that she found sufficient to protect the children. And the kids' immigration status, because I think one of them was born in Germany, the other one was not, correct? That's, yes, correct. Does that affect child protective services obligation to children? Do we know? I don't think we know. I don't think there are any findings to that effect. It didn't seem as though, based on any research the court did or anything provided by Mr. Hanke, the German law expert, that there was any reason to believe children wouldn't be protected by German family services, regardless of their immigration status. All right. Thank you. Thank you. Ms. Powers, I'll give you, we went over, I'll give you about four extra minutes here. Thank you, Your Honor. And where I'll start is the point that Your Honor just crystallized, that the problem with the lower court's fact investigation being off the record is that we don't have a record of any of this information relating to child protective services. When the lower court investigated with the State Department and with the German government, all that came out of that, that's on, that's anywhere in the record, is that child protective services existed or exists in Germany. Counsel, I mean, one question that I have is that you had just as much opportunity to, you know, research German law, find an expert to come in and say, that's actually not how this works. You know, things take longer, things are, you know, not going to be as smooth as the district court's assuming. And you haven't put anything forward. So, you know, you're just attacking what was presented, but you're not coming forward with your own information that we can look at or that the district court could have looked at. So how is that, how does that make sense? Because Mr. Henke, the German law expert, he did testify that the court in Germany likely will not have jurisdiction until the children have been there for six months. He testified that the court in Germany does not recognize Hague return orders as custody orders. And of course, like in America, recognizes other countries' substantive custody orders from their family courts, the jurisdiction to enter custody orders. And what he was retained to explain to the court was the German family law. What remedies are there under German family law statutes for protection of the children for obtaining custody of the children? And under federal rule 44.1, and the defunct Brun case that cited in our brief, and the advisory committee note paragraph number six to rule 44.1. This is exactly why when a lower court goes and does this sort of investigation, if something is found, like the fact that there's child protective services that the lower court intends to rely on, then at that point, the advisory committee and the jurisprudence does recommend that the court and require that the court alert council so that both sides can either challenge that evidence or present evidence to the contrary, so that it can be as rule 44.1 and defunct Brun say a collective effort towards reaching the foreign law. And to Her Honor's point on the burdens of proof as well, if the court is inclined to decide on that issue and to allocate the burden of proof to the petitioner, then we say in the next remand evidentiary hearing, it would be the petitioner's burden to prove what child protective services exist, what they can do. And for example, to answer Her Honor's question with respect to whether the citizenship, nationality, or residency of the children has any impact whatsoever on what services any child protective services organization could provide. Can I just ask you? So the district court seemed to backtrack from its initial finding that sole custody could not work and basically said, as long as there's joint custody for three months, then I'm okay with RADU having sole custody after that. Is that your understanding of what the district court found? So we say what the district court found was, really, it didn't make any findings on that. All it held was that the mother would take the children back. That was sufficient. And whatever happened after three months, it happened after three months. But that sentence that I read at ER44, where it says that as long as she goes back for the first three months, that will help the children transition to the care of their father. Doesn't that anticipate that the district court assumes that there's at least a good chance that the father's going to end up with sole custody for some period of months before the German courts rule? And that the district court says that's okay, that all I'm saying is that you need to have joint custody for the first three months. And then after that, it's fine if the father has sole custody. Is that clear error? Is that an abuse of discretion? So what we say on that point is, we say we prevail on either standard, whether it's abuse of discretion or a clear error. Because firstly, there's nothing in the record to suggest that on, for example, day 181, there will be a custody order. All the record establishes is that after six months, the German court has jurisdiction to make a decision. It doesn't say there will be a decision or in what period of time there will be a decision. And what the lower court explains is, it anticipates the maternal grandparents going back to Germany, even though the testimony didn't say they would, the testimony said they probably wouldn't. Isn't that failing to address the district court's sort of clarification of the psychological harm to say that what she meant was over too long a period? I'd like for you to address that because it seems like if she's clarifying the risk of sort of anticipated or set out by the district court of three months with the mom, and then, you know, with the dad, kind of transitioning to the dad or allowing the dad more custody, because again, she meant to say it was over too long of a period. Why wouldn't that make sense? And why is that clearly erroneous or an abuse of discretion? Well, she didn't actually, the lower court didn't actually change its grave risk finding because as your honor pointed out in the beginning of argument, the grave risk finding has never been challenged. So there is a grave risk finding and what the courts are, the lower courts are instructed the period of time to look at for grave risk is the period of time between a potential return and a potential resolution of the substantive underlying custody action. And the reason we say the further evidentiary hearing is required is to look at exactly that period. To look at now having heard from Dr. Henke that in six months, the German court will have jurisdiction. So we're looking at a period of a minimum of six months before there's a custody determination. And the psychological expert would have in our submission opined that the children would continue to suffer psychological harm within that period of time between arrival back in Germany and the time the German court was able to make a decision in the case. I thought that the record showed that below, you said that the expert was going to talk more about just the transfer of the kids to Germany and that they would suffer. The expert was going to say they would suffer harm if the dad did that. And the district court said, we don't need to go there because I'm never going to have it done that way. Right. But now, so in the lower court, what we needed to make sure to cover with the expert was what would happen if the children were ending up living in Germany with the father. And the lower court had said it wasn't contemplating that. But now when we look at the three months, six months beyond period, it is contemplating that. Well, no, but it's not. I mean, what the district court said is that the father comes over and gets the kids initially and takes them back. That's not what I'm contemplating. And the district court's not contemplating that. The district court is assuming that Sean will take the kids over and be with them for three months. Right. And what we say, if the court, as this circuit has instructed in Gouden, if the lower court is to look at the grave risk as it exists now, the court does need to look at that period beyond the actual physical movement of the children from the U.S. to Germany. It needs to look at what the grave risk will be in that intervening period between return and a decision by the German court. And I see I've used up my additional time. Of course, I'm happy to answer any additional questions if you have them. But I just want to be conscious of your time. Any other questions? Okay. Well, thank you. Thank you both. Really appreciate your thoughtful responses to our questions here on this very, what I find to be a very difficult case. The case of Baghdad Raju versus Sean is now submitted. And we are adjourned. Thank you. This court for this session stands adjourned.
judges: MURGUIA, NELSON, FORREST